# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00924-COA

**LATRICE JACKSON A/K/A LATRICE**
**MARLENE JACKSON A/K/A LATRICE M.**
**JACKSON**
                                                      APPELLANT

**v.**

**STATE OF MISSISSIPPI**                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2016 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN E. BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | MATT SULLIVAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 12/12/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Latrice Jackson appeals her conviction of abuse of a vulnerable person and claims the circuit court erroneously denied her motion for a trial continuance. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Jackson was employed as a behavioral-health assistant (BHA) at Millcreek Behavioral Health Facility in Magee, Mississippi. Jackson was one of three BHAs who were assigned to the Pecan Grove Cottage at Millcreek. Pecan Grove is a residential facility, staffed

twenty-four hours per day, for mentally disabled females between the ages of thirteen and seventeen years old.

¶3. Jane Doe is a resident of Pecan Grove.[1] Jane is nonverbal. She can feed herself, but needs assistance with bathing, dressing, and going to the bathroom.

¶4. On June 4, 2013, Jackson and another BHA, Rebecca Ross, were working the 2:30 - 10:30 p.m. shift. Jackson, Ross, and Jane were upstairs in the day room. Jane was sitting in a chair by the doorway. Jackson asked Jane to come and take a bath. When Jane did not move, Jackson repeated her request. However, Jane again refused to move. According to Ross, Jackson then "grabbed [Jane] by her hair and like grabbed her hands around her hair and drug her out of the chair and down the hall to the bathroom."

¶5. Ross went to get another BHA, Shequita Preston, who was doing laundry in the linen room. Ross stated that when Jane came out of the bathroom, she was crying and upset. Ross further stated that she heard Jackson call Jane "a fat B word" as she came out of the bathroom.

¶6. Preston described Jane's scalp as "red" and stated that "it looked like a plug had kind of been pulled from [Jane's] hair — from her head." Preston further stated she could see bald spots on Jane's head. Preston explained that if a resident refused to bathe, the BHA was simply supposed to note it in the resident's chart. Preston reported the incident to her unit coordinator. As a result of the incident, Jackson was terminated.

¶7. On September 9, 2013, Jackson was indicted in the Simpson County Circuit Court on

---

[1] For privacy purposes, the victim's name has been changed to a fictitious one.

one count of abuse of a vulnerable person in violation of Mississippi Code Annotated section 43-47-19(1) and (3) (Rev. 2015). On September 16, 2013, a public defender was appointed to represent Jackson. A jury trial was scheduled for March 17, 2014. For reasons unexplained in the record, the trial did not go forward as scheduled.

¶8. On April 7, 2015, an agreed order of continuance was entered, which reset the trial to September 8, 2015.[2] Shortly before trial, on August 27, 2015, Jackson was appointed new counsel, who immediately moved for a continuance.[3] As a result, another continuance was granted. A new trial date was set for March 31, 2016.

¶9. On March 10, 2016, twenty-one days before trial, Jackson filed a "motion to inspect and copy certain records and documents in the custody of Millcreek Behavioral Health Facility." The State objected based on relevance and because Jackson requested the State to produce documents that were not in its possession. Following a hearing, the circuit court granted the motion and ordered the State to obtain from Millcreek: the employee files of all Millcreek staff members who were interviewed and/or questioned in regard to the events on June 4, 2013; a copy of the Millcreek handbook; and Jane's medical history. An "order to subpoena certain records and documents" was thereafter entered on March 14, 2016.

¶10. Millcreek was subsequently contacted and received a copy of the circuit court's order.

---

[2] It is unclear the number of continuances granted by the circuit court between March 17, 2014, and April 7, 2015, as the record is void of any case activity.

[3] Jackson's original counsel, Ray Therrell, resigned as the Simpson County Public Defender. Megan Stuard was appointed to take over Therrell's remaining court-appointed public-defender cases. Stuard continued as Jackson's counsel throughout the remainder of the litigation and trial.

Millcreek advised that due to the amount of time that had passed since the incident, many of the requested documents were in an off-site storage facility and would have to be located and brought back to the facility in order to be copied and produced. The documents, which amounted to approximately 1,000 pages, were ultimately delivered to defense counsel in three separate deliveries over the course of one week, with the final delivery on March 29, 2016.

¶11.   On March 24, 2016, just prior to the final delivery of the documents, Jackson filed a motion to dismiss or, in the alternative, motion to continue, arguing that the State had failed to provide a speedy trial and failed to "fully comply" with the circuit court's order regarding the production of the Millcreek documents. An agreed order of continuance was entered on March 28, 2016, to allow both parties additional time to review the recently produced documents. This was the third continuance of record granted by the circuit court. The trial was reset for April 18, 2016, which gave counsel approximately twenty days to review the documents prior to trial.

¶12.   On the morning of trial, defense counsel moved ore tenus for a continuance.[4] Defense counsel explained she did not have sufficient time to review the "hundreds and hundreds of documents" that were produced and needed additional time "to locate some of [the] witnesses that [would] be crucial to [Jackson's] defense." The circuit court ruled as follows:

> Due process requires a speedy trial. This case was indicted on September the 9th, 2013. Today is April the 18th, 2016. We have a special venire out in the courtroom ready to go forward. On the order of arraignment this case was originally set for March 17th, 2014. That's when Ray Therrell was the

---

[4] The ore tenus motion for a continuance was heard in chambers.

4

attorney for the defendant. On September the 8th, 2015, because Megan [Stuard] had just been appointed to represent the defendant, this case was continued. It was originally set for 2015. At the request of the defendant it was continued until March 31st, 2016. At that time, the defendant stated that she had not or had recently received a voluminous discovery from the [State] and needed additional time. The Court offered to reset the case during the term and give [defense counsel] two weeks extra to go through those documents, but after all was said and done, on April 18th, 2016, which is today, the case was set for today from Wednesday, March 31st, 2016. So we can go [into] the next term and you'll have the same excuses that you've got this term. So I'm going to overrule your motion for a continuance.

¶13. Following a jury trial, Jackson was found guilty. The circuit court deferred sentencing and ordered a presentence report. On May 24, 2016, Jackson was sentenced to twenty years, with fifteen years to serve in the custody of the Mississippi Department of Corrections, followed by five years' postrelease supervision. Jackson was ordered to attend anger-management classes while in custody.

¶14. Jackson filed a motion for a new trial, a motion for a judgment notwithstanding the verdict, and a motion for a directed verdict of not guilty, all of which were denied. Jackson now appeals and argues the circuit court's denial of her motion for a continuance was reversible error.

STANDARD OF REVIEW

¶15. It is within the circuit court's discretion to grant or deny a motion for a continuance. *Shelton v. State*, 853 So. 2d 1171, 1181 (¶35) (Miss. 2003). A circuit court's decision to grant or deny a motion for a continuance will not be reversed unless "manifest injustice" results. *Id.* "A denial of the continuance shall not be ground for reversal unless the [appellate] court shall be satisfied that injustice resulted therefrom." Miss. Code Ann. § 99-

5

15-29 (Rev. 2015).

ANALYSIS

¶16.     Jackson's sole argument on appeal is that the circuit court erroneously denied her motion for a continuance. Jackson claims the circuit court's denial of her motion for a continuance was an abuse of discretion for three reasons. We address each in detail.

*I.        Unprepared Counsel*

¶17.     Jackson first claims that by denying her motion for a continuance, the circuit court "knowingly subjected [her] to the situation where she was defended by an unprepared attorney." However, Jackson fails to explain how her counsel was unprepared or to provide evidence from the record of such a lack of preparedness. Our review of the record shows defense counsel actively participated in voir dire, thoroughly questioned and cross-examined the witnesses, made numerous objections during trial, and assisted in drafting the jury instructions.

¶18.     Although Jackson claims she needed additional time to "locate some witnesses," she failed to offer the witnesses' names or to explain what information the witnesses would provide that would be "crucial to the defense." Section 99-15-29 states in part:

> On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done.

¶19.     Here, the denied motion for a continuance about which Jackson complains was an ore

6

tenus motion.[5]  In other words, Jackson "made [no] effort to comply with the procedural requirements of [section] 99-15-29[.]" *Stack v. State*, 860 So. 2d 687, 692 (¶8) (Miss. 2003). As Jackson failed to provide the necessary information, she failed to comply with the procedural guidelines in order to secure a continuance. *Id.*; *Johnson v. State*, 872 So. 2d 65, 70 (¶20) (Miss. Ct. App. 2004) (citing Miss. Code Ann. § 99-15-29 (Rev. 2000)).  Our supreme court "has repeatedly held that a judge did not abuse his . . . discretion . . . in denying a defendant's motion for continuance . . . when that defendant failed to comply with the procedural guidelines[.]" *Stack*, 860 So. 2d at 692 (¶8).

¶20.    Additionally, while Jackson asserts her counsel did not have sufficient time to review the Millcreek documents, the record shows that the prosecutor received the same amount of documents at the same time as defense counsel and was able to timely review those documents and prepare for trial.  Importantly, defense counsel admitted she had had this case for almost one year.  Thus, the delayed request for the Millcreek documents and the resultant time crunch were defense counsel's own creation.

¶21.    "Denials of motions for continuance have been upheld where defense counsel was afforded fewer days to prepare for trial than here[.]" *Id.* at (¶9).  *See also Lyle v. State*, 908 So. 2d 189, 194 (¶21) (Miss. Ct. App. 2005) (negatively referenced on other grounds by *Archer v. State*, 986 So. 2d 951 (Miss. 2008)).  Overall, we find Jackson's claim is not supported by the record.

  II. *Speedy Trial*

---

[5] "Ore tenus" is Latin for "by word of mouth."  Black's Law Dictionary (7th ed. 2000).  An ore tenus motion is one "[m]ade or presented orally."  *Id.*

7

¶22. Jackson next claims the circuit court placed her speedy-trial rights over the rights of effective representation and a fair trial. We disagree. It was Jackson who first expressed her right to a speedy trial. In her last written motion to the circuit court, Jackson asserted she was "entitled to a reasonably[] speedy trial, which the Constitution guarantees unto her," and she moved to dismiss the charge based on the State's failure to provide a fast and speedy trial.

¶23. Given the number of continuances previously granted, the amount of time since Jackson had been indicted, and Jackson's expressed entitlement to a speedy trial, we do not find the circuit court's consideration of and concern for Jackson's speedy-trial rights were reversible error.

### III.    *Alleged Disability*

¶24. Jackson asserts her defense counsel "discovered, post-trial, that Jackson was suffering under some sort of disability" and "graduated from high school with a special[-]education diploma or certificate." Jackson last claims that had defense counsel "been given sufficient time to prepare for this case, she would have had time to properly investigate Jackson's psychological background." We disagree and find no evidence to support Jackson's claim.

¶25. The record shows that an evaluation of Jackson was completed by Region 8 Mental Health Services on May 4, 2016, prior to sentencing. It appears the evaluation was performed at defense counsel's request. The evaluation report noted that Jackson had been charged with and convicted of "pulling a patient's hair and dragging her down the hallway into the bathroom," and was currently incarcerated and awaiting sentencing. The information contained in the report was provided by Jackson.

8

¶26. The evaluation report does not indicate that Jackson suffers or suffered from any mental illness or disability.[6] In fact, the report specifically notes that Jackson did not advise of any prior mental-health hospitalization or service, or alcohol or drug treatment. Additionally, there were no physical disabilities, "depressive-like behavior," "manic-like behavior," "dementia-like characteristics," or "psychotic-like behavior" noted in the report.

¶27. The report does indicate that Jackson suffers from a developmental disability. Under the "developmental disability" section, the report notes that Jackson was a "special ed" student since elementary school, with "[s]ignificantly sub-average intellectual functioning before age 18" and "[s]ubstantial limitations in adaptive skills." However, simply because Jackson attended special-education classes and graduated with a special-education diploma does not mean she suffered from a disability sufficient to avoid criminal responsibility.[7]

¶28. "[T]he test of criminal responsibility is the [defendant's] ability . . . , at the time [of] . . . the act, to realize and appreciate the nature and quality thereof—his ability to distinguish right and wrong." *Keeler v. State*, 226 Miss. 199, 204, 84 So. 2d 153, 156 (1955) (citation omitted). There is nothing in the report to indicate Jackson was incapable of understanding the nature and consequences of her actions. While the report indicates that Jackson "would benefit from further psychological assessment," there was no finding of the need for commitment, nor any indication that Jackson was unable to distinguish right from wrong.

---

[6] The presentence-investigation report also notes Jackson has never been diagnosed with any mental illnesses.

[7] The record shows Jackson graduated from high school in 2005 with a special-education diploma.

¶29. Importantly, Jackson was administered and passed all exams and evaluations necessary for employment at Millcreek.[8] Specifically, on March 18, 2013, just three months prior to the incident, Jackson was administered and passed the "Abuse/Neglect/Confidentiality/Patient Rights Competency Exam." The first question on the exam asked the following:

> 1. A deliberate act of physical, mental/verbal, or sexual mistreatment is considered to be which of the following?
>
> > a. Part of the program
> >
> > b. Abuse
> >
> > c. Necessary to maintain control

In response, Jackson correctly circled "b." Additionally, question number seven asked the following:

> 7. According to [Mississippi Code Annotated section] 43-47-5 [(Rev. 2015)] of the Mississippi Vulnerable Adults Act, abuse is:
>
> > a. A method that can be used to prevent abnormal behavior.
> >
> > b. The willful infliction of physical pain, injury or mental anguish on a vulnerable adult by unreasonable confinement or deprivation by a care taker of service.
> >
> > c. An act by staff members that results in injury only.
> >
> > d. Only applied to the adult population.

In response, Jackson, again, correctly circled "b."

---

[8] The record shows that at least four separate exams were administered. The exams included detailed questions and hypothetical scenarios specific to employment at Millcreek, including abuse and neglect issues.

10

¶30. Thus, it is clear Jackson knew and understood the definition of abuse and what actions constituted abuse. Based on Jackson's responses to the remaining exam questions, it is also clear that Jackson knew and understood that "[n]o abuse w[ould] be tolerated," and that if found guilty of abuse, she could be fined and/or sent to prison.

¶31. Additionally, the record includes a letter from Jackson to Millcreek, wherein Jackson claims Ross was responsible for Jane's injuries. The letter states as follows:

> I, Latrice Jackson, witnessed Rebecca Ross harming [Jane] on the day of Tuesday, June 4, 2013[,] at approximately 8:45 p.m. [Ross] drug [Jane] down the hall after [Jane] refused to complete her p.m. hygiene. [Ross] pulled [Jane] by the hair trying to get her to the tub, [and] as a result of the hair pulling some of [Jane's] hair came out. [Jane] was sitting in the chair and was pulled out of it against her will. [Ross] started to call her names[;] this has been going on for a while now. [Ross] would say that [Jane] was a fat b[----]. I feel that the other children are in danger because [Ross] carries a gun in the trunk of her car and everyone [is] aware of it.
>
> Latrice Jackson
> June 11, 2013

We find this letter further evidences Jackson's understanding that the alleged actions (i.e., "harming [Jane]" by grabbing her by the hair and dragging her down the hall) were wrong.

¶32. Overall, despite her claim of "some sort of disability," the record shows Jackson clearly understood her employment duties and obligations at Millcreek. Moreover, the record shows Jackson understood the nature and consequences of her actions and that pulling a resident's hair and dragging her down the hall constituted abuse and was punishable by law.

¶33. Although Jackson claims additional time would have allowed defense counsel the opportunity to investigate her psychological background, "there has been no showing that [Jackson's] counsel would have done anything differently or presented any different type of

defense had the motion [for a continuance] been granted." *Stack*, 860 So. 2d at 692 (¶10). At no time during the almost three years of litigation was any alleged disability raised by either defense counsel or Jackson herself. Moreover, no evaluation of Jackson was ever requested prior to or during trial. Notably, no reason for this failure was given. We can only speculate whether the failure to have the evaluation performed was negligence or an intentional tactical maneuver. *See id.* Regardless, we do not find merit to Jackson's claim.

CONCLUSION

¶34. "The burden of showing manifest injustice is not satisfied by conclusory arguments alone[;] rather the defendant is required to show concrete facts that demonstrate the particular prejudice to the defense." *Id.* at 691-92 (¶7) (quotation marks omitted). We find Jackson failed to meet this burden. Accordingly, we do not find the circuit court abused its discretion in denying Jackson's motion for a trial continuance. We therefore affirm the conviction and sentence.

¶35. **AFFIRMED.**

**LEE, C.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**