## CARRAWAY *v.* STATE.

(In Banc. April 23, 1934. Suggestion of Error Overruled May 21, 1934.)

[154 So. 306. No. 31025.]

See, also, 163 Miss. 639, 141 So. 342; 167 Miss. 390, 148 So. 340.

**Bidwell Adam**, of Gulfport, and **S. D. Redmond**, of Jackson, for appellant.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

Briefs of counsel not found.

Argued orally by **Bidwell Adam** and **S. D. Redmond**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**McGowen, J.**, delivered the opinion of the court.

At the April, 1931, term of the circuit court of Jackson county, appellant was convicted of the crime of rape, and the death penalty therefor was imposed. Motion for a new trial was there made and overruled; appeal was prosecuted here and the judgment affirmed; and a new date for the execution of the sentence was fixed. See Carraway v. State (Miss.), 137 So. 325. On January 8, 1932, after several reprieves had been granted by the governor, and on the day the sentence was about to be executed, appellant applied to the judge of the circuit court for a writ of error coram nobis, which was denied in vacation. One of the judges of this court granted an appeal with supersedeas; and it was held thereon by this court that no appeal was allowed from an order of a trial judge in vacation refusing the writ. See Carraway v. State, 163 Miss. 639, 141 So. 342.

At the next succeeding term of the circuit court appellant was brought into court on a writ of habeas corpus

sued out for the purpose of having the sentence of the law imposed, and in answer thereto the appellant filed a motion for a new trial. Evidence was heard thereon and overruled by the court, and thereafter one of the judges of this court allowed an appeal with supersedeas. On the hearing of that appeal in this court, the judgment of the trial court was affirmed (see Carraway v. State, 167 Miss. 390, 148 So. 340), and June 28, 1933, was fixed for the execution of the judgment.

Thereupon appellant, before the date of execution, filed a petition in the district court of the United States for the southern district of Mississippi for a writ of habeas corpus and an injunction against the execution of the sentence, which injunction was granted on an ex parte hearing. After the date for the execution of the sentence had passed, and before the final hearing in the federal district court, appellant filed another motion for a new trial in the circuit court of Jackson county and dismissed his proceeding in the Federal district court. There the court, on hearing the proof offered on the petition and the arguments of counsel, overruled the motion, and the appellant, who was in court in person and represented by counsel was again sentenced to be hanged, and the date of his execution was fixed; whereupon the appellant objected to the imposition of the sentence because a writ of habeas corpus had not been sued out pursuant to section 1311, Code 1930. From this last judgment overruling the third motion for a new trial and imposing the death sentence, appellant was also allowed an appeal with supersedeas.

When the case was last considered by the court, 167 Miss. 390, 148 So. 340, every fact, in substance, presented here was then before us. In the former case every question here presented was there carefully considered and decided. Our decision there finally determined the case and should be accepted as conclusive on those facts whether argued or not.

This is, in effect, the fourth motion for a new trial upon the facts which were known to the defendant and his counsel when the case was tried, and the first motion was, by the lower court, overruled.

We considered the third motion for a new trial and reached the conclusion there was no merit in it. Every material fact heard by the court in this last, or fourth, motion for a new trial was before this court, and was examined by this court on the third motion for a new trial. The evidence taken on the third trial is made a part of this record.

This appears to be no longer a trial of the appellant's case, but an investigation of the trial judge and the appellant's attorney, Whetstone. The record clearly shows that the family of Carraway employed and paid Whetstone as appellant's counsel. He had the right to choose any lawyer he saw fit, and it would be a dangerous proceeding if a court declined to permit the counsel chosen and selected by the family of accused, and accepted by the appellant, to represent the appellant in the trial of his case.

Whetstone said, in effect, that he defended Carraway to the best of his ability; that he had some absent witnesses who would, perhaps, have testified strongly as to an alibi, but that he decided, because the witnesses he had present were white men, it would be better for the defendant to go to trial. He does testify that Colmer, the district attorney, told him, in effect, that he better not apply for a continuance on account of those witnesses, as it might "be worse" for the appellant. Whetstone, however, testified positively that he was not influenced by fear, that he exercised his own judgment in not asking for a change of venue and in not asking for a continuance of the case.

Carraway appears to be willing to testify in the various stages of this case to meet the exigencies of the particular occasion, and his several examinations do not

demonstrate any lack of appreciation or insufficient intelligence to conduct his case in court.

The entire record demonstrates that there is not now, nor has there been, sufficient evidence upon which to successfully predicate a motion for a new trial. Throughout the numerous hearings that have been presented to this court, there nowhere appears in the record, at this date, any substantial evidence upon which a motion for a change of venue could have been sustained. There was no call for military aid, and no unusual number of deputy sheriffs, and no evidence of any excitement about the courthouse or in the town, at the time the trial took place. The appellant had remained in jail in an adjoining county, very accessisble to a mob if one had been formed or contemplated. The case is remarkably free from even the substantial threat of a mob, considering all the facts surrounding it. The trial judge, in overruling the third motion for a new trial, declared it appeared to him that "every avenue has been exhausted in the interest of this defendant, not only for the purpose of obtaining a new trial, but for the purpose of delay in a final judgment of the court. I heard this case very carefully, I heard the witnesses testify, I heard this lady relate the circumstances and she related it in a way that left no doubt in my mind about the truth of what she said. . . . I am satisfied that his conviction was a fair conviction, that he was justly and properly convicted; and I can see nothing connected with this case that would justify this court, if it had the power, in now setting aside what has been done and going back and starting over again."

Much stress is laid upon the fact that Wentzell, a witness who testified before the jury on the trial of the case, had changed his testimony as to the appellant's statement. On that trial, he testified that Carraway said, "I did it." He changed his testimony under these motions for a new trial, and quoted Carraway as saying, "I was so drunk I don't know if I did it or not."

On the third appeal, we, in effect, said that these matters were foreclosed, and did not constitute grounds for a new trial, and there reannounced the principles found in Cummins v. State, 144 Miss. 634, 110 So. 206, 207, in which a prosecuting witness who had testified to the guilt of rape of the appellant recanted and wrote a letter saying she had testified falsely, and, in that behalf, this court said: "There is no merit in this appeal, as the application for writ of error coram nobis will not allow any such case. If we should set aside a conviction in a criminal case merely because some witness subsequent to the trial confessed, or stated that his testimony was not true, there would never be an end to litigations. The credibility of the witness and the truthfulness of her testimony was an issue in the main trial, and the defendant was perfectly competent to understand the issue and conduct his defense."

The facts in the case at bar are so utterly and entirely different from the facts before the United States supreme court in the case of Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, that we think it would be useless to point out the difference. There the court held, in effect, that the trial court denied the appellant the benefit of counsel to represent him in his case, and allowed the counsel he did select no time in which to prepare the case. The record in the case before us demonstrates, beyond the shadow of a doubt, that Whetstone was fully advised in the premises, and, while he may not have defended the case as a member of this court would have, or as counsel who now represent the appellant, it is unthinkable that an appellate court shall turn aside to investigate the record to see if, perchance, some point was not made by appellant's counsel or some evidence not presented which this court might think would have been advantageous to the appellant.

To sum up, so far as the absent witnesses are concerned, throughout the several proceedings, the testi-

mony of those witnesses was never produced in court, nor was the failure to do so accounted for, as required by the rules of this court. So far as the conversation with the district attorney is concerned, we feel that we should say that, if such a conversation should be thought to be a ground for declaring the judgment void, then the enforcement of the criminal laws in this state might as well be abandoned. No fear was produced in Whetstone's mind by Colmer, and, if he should say now there was, this record contains no substantial basis therefor.

There was no fraud practiced by Whetstone, the district attorney, the trial court, or anybody else, upon this appellant.

The court below should not have entertained these motions for a new trial, because no new fact is presented, according to the laws of Mississippi, and, we are persuaded to believe, of the United States, to show that the appellant did not have a fair and impartial trial.

The case will be affirmed, and Thursday, May 31, 1934, is fixed as the date upon which the sentence of death shall be inflicted according to law.

Affirmed and sentence to be executed Thursday, May 31, 1934.

**Griffith, J.,** delivered a dissenting opinion.

It is universally held that the fact that a judgment was obtained by or through fraud is a sufficient reason for vacating such judgment either before or after the expiration of the term at which it was rendered, courts of record possessing an inherent common-law power in this behalf; and it is not necessary to the enforcement of this rule that the fraud shall be immoral or corrupt; legal fraud is sufficient; and the great weight of authority supports the proposition, as a corollary, that the judgment must be set aside when it is clearly shown that material testimony was used which was untrue, and that the party

introducing it, and thereby securing the judgment upon it, definitely knew at the time that it was untrue—the great difficulty in the enforcement of the latter branch of the rule being that of showing clearly the existence of the elements necessary to satisfy it.

But when the witness who gave the testimony admits on the hearing to set aside the judgment that the material testimony which he gave on the trial in which the judgment was obtained was untrue, and when the party who introduced that testimony, and allowed it to stand in the record as true, and thus vouched for it as true and obtained judgment by that use, admits on the second hearing that he personally knew at the time of the original trial that the testimony in question was untrue, then the existence of the fatally poisonous elements are clearly established; they are admitted; and there is nothing left under the law except to enforce the rule and set aside the judgment. This is not a case, as was Cummins v. State, 144 Miss. 634, 110 So. 206, where the facts were merely that a witness recanted; and that case has no sort of pertinent application here; for here the state knew at the time of the original trial that the testimony of the witness was untrue and nevertheless used it, and this latter is the point that makes a complete and controlling differentiation.

In my dissenting opinion in this case, Carraway v. State, 167 Miss. 390, 406, 148 So. 340, relying upon the principles above stated, I called attention to the fact that the record as then before the court showed that a material part of the testimony by which the verdict of guilty was secured, and without which an impartial jury might not have convicted at all, was the testimony of the deputy sheriff that the accused had made to him in the immediate presence of the district attorney a direct and unqualified confession of guilt, when on the motion for a new trial the deputy sheriff admitted that no such confession was made, and the district attorney admitted

that he knew, and knew all the while, that no such confession was made, and I there insisted that such a judgment so obtained was, in the eyes of the law, a fraud, whatever the motives were, and although there was no conscious wrong intended. The effect upon the jury, the operative effect, the legal effect, is the determinative point.

Let us suppose that the alleged confession had been extorted from the accused by torture, as was the case in Fisher v. State, 145 Miss. 116, 110 So. 361, 365, and that the torture and the securing of the confession thereby had been admitted by the witnesses on a motion for a new trial, and admitted by the district attorney that he knew it when the extorted confession was put in evidence and allowed to remain therein, vouched for by him as a true and voluntary confession—in such case most certainly the court would have set aside the conviction, and would have said, as was said in the Fisher case: "The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure, and wherever the court is clearly satisfied that such violations exist, it will refuse to sanction such violations and will apply the corrective."

Now, where is the difference in legal consequence or effect, may I inquire, between a confession never made, and which the officers, including the district attorney, knew was never made, but which nevertheless so knowing they put in testimony and thereby secured a conviction, as compared to a confession which, although made, was procured by torture and these same officers knew it, now admit they knew it, and nevertheless used it? In the latter case this court would have denounced the proceeding, would have said that "the duty to maintain constitutional righs of a person on trial for his life rises above mere rules of procedure," and would have applied the corrective, because the confession was admittedly obtained by torture; whereas here, where there was never

any confession made, but was used by the officers as if made, and so admitted by them, the court excused the conduct by taking recourse to mere rules of procedure. See controlling opinion, 167 Miss. 390, 148 So. 340.

But it is said that whatever was held in the controlling opinion last mentioned, and whether right or wrong, we are bound by it now, because, so it is declared in the present majority opinion, there is nothing new in the present record. But in so declaring the present majority opinion entirely omits and does not even mention the present certificate of the trial judge by which now for the first time two important facts appear, one of which, in my judgment, is a determinative fact upon the issue of due process of law.

It appears for the first time by the present record that, when the testimony was given by the deputy sheriff in the first trial that the accused had made, in the presence of the district attorney, a direct and unqualified confession, the district attorney, knowing differently and being troubled upon this point, went to the trial judge during the trial and informed the trial judge that the testimony of the deputy sheriff was not true in point of fact, that the accused had not confessed, but had merely failed, on being charged with the offense, to deny it; that what the accused had actually said was that he was drunk and did not know what happened; and thereupon the trial judge advised the district attorney that in the opinion of the judge the difference was not sufficiently material to require the district attorney to take steps to correct it, that a failure to expressly deny was equivalent to a direct confession; and thereupon the district attorney, in deference to the opinion of the judge, allowed the incorrect testimony to stand as delivered—simply another example of how the best of men, prosecutor and judge, are taken from their feet when surrounded by the influences everywhere in the air in a case like this. But this was a matter so vitally material to the interests of the

accused that it would normally arouse at once the active intervention of counsel for accused, unless that counsel were utterly dead as to the defense intrusted to his hands. Unless dead to that interest, defense counsel would immediately have elicited the facts from his client, and would have shown, by cross-examination of the deputy sheriff, that he was mistaken as to the alleged confession; at least he would have made a vigorous attempt so to do; but he did not, the original record showing that cross-examination of the deputy sheriff was wholly waived by counsel for the accused; and thus all that has above been said is aligned into a perfect connection with what is now for the first time conclusively shown, and by the present certificate of the trial judge, to the effect, more particularly later to be mentioned, that the trial judge knew and became definitely conscious of the fact during the original trial that counsel for the accused was absolutely indifferent as to the result of the trial and the fate of his client, that instead of making a defense he was in matter of substance dead to that defense.

All will agree, as I suppose, that in the matter of due process of law all courts, state and federal, are bound by the opinions of the federal supreme court. All will agree, too, that principles control decision, and that, when the principle is established, the court applies those principles to the facts of each particular case as each arises. National Surety Co. v. Miller, 155 Miss. 115, 132, 124 So. 251. The facts of each decided case must be carefully scrutinized so as to see what were the principles which controlled the opinion, and, when the principles are thus perceived, those principles are to be applied to a succeeding case coming within those principles; and the principles are not to be denied in a succeeding case merely because the details of the facts are not exactly the same, else no case would ever be a precedent for another.

The latest decision and opinion of the federal supreme court involving the question of due process in a capital

case is Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77
L. Ed. 158, 170, 84 A. L. R. 527, and therein it was de-
clared that the right to the aid of counsel in a capital
case is of such fundamental character as to be included
in the conception of due process of law; and it was fur-
ther declared in various phrases of expression that this
must be substantial and effective aid; that the aid must
be aid in a real sense; that counsel must have a clear
appreciation of his responsibility and be impressed with
a sense of individual duty; that the aid must be active and
zealous, not that which is pro forma, amounting only to
a solemn gesture; and it was further held the duty of the
court to see to it that counsel for defendant in a capital
case should make defense within the requirements above
expressed. And certainly all this must be true, else courts
would permit a valuable constitutional guaranty to be-
come of no value, else courts, while gravely pronouncing
platitudes upon the inviolability of the constitutional
guaranty, would presently remain immobile while the
purpose of the guaranty is subverted by a straw man, or
by a shell from which the substance is absent.

There was much in the original record submitted here
without the aid, in this court, of counsel for the accused
which suggested that the accused was without much aid
in the trial court; but when later, by other counsel, the
startling fact was developed that the state had used in
the trial a confession which the state then and there knew
was never made, and this court responded that the point
could not be availed of because counsel for the accused
should have shown that fact in the original trial, present
counsel for the accused have now developed the actual
reality, and have shown conclusively in this present rec-
ord that the accused had no counsel in fact in the original
trial, he had counsel only in form; that the counsel, to
use a common expression, "laid flat down on the job,"
surrendered to the state at every material contestable
turn in the proceedings, even to the extent of allowing

a fictitious confession to be used without a word of opposition thereto. And this is definitely shown not only by the testimony taken on that subject and which is now before us, but it is indisputably made known to us by the certificate in this record of the trial judge, and now for the first time of record, who states therein that the attorney representing the accused "at every stage of the proceeding evidenced an absolute indifference as to the result of the trial and the fate of his client;" and the trial judge further says that, having observed throughout the trial that "absolute indifference to the fate of his client," he is "firmly of the opinion that in this case, where the defendant's life is at stake, he should not be held to accountability for the failure of his attorney then representing him to properly present his case." And this certificate is, as already mentioned, that the trial judge knew of this, observed it, and was conscious of it during the original trial, not that he learned of it after the trial was over and the term had adjourned. And this present statement of the trial judge is, or ought to be, conclusive upon us and upon any and all courts.

Since the right to the aid of counsel in a capital case is of such fundamental character as to be included in the conception of due process of law, and since that aid must be real and active and decently zealous, and since it is the duty of the trial judge to see to it, Powell v. State, supra, that such aid is rendered as an actuality, not as a mere pretense, what more do we need than is now before us to know that this pretended trial was one which was without the essentials of due process of law? The trial judge now admits the facts, everybody else connected with that original trial admits enough of them to indubitably establish them, and this court should apply the corrective. When a judgment is invalid for want of due process, the court, and any and all courts, should so declare whenever the facts are shown which disclose that invalidity, whether those facts be shown sooner or later.

Such a judgment may be attacked at any time, in any manner, anywhere, and the facts may be shown dehors the record of the original trial. Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969.

**Anderson, J.,** delivered a dissenting opinion.

In the light of the decision of the supreme court of the United States in the ''Scottsboro cases'' (Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527), I am confident that this appellant was denied due process on his trial. In fact, the evidence in this case going to show a denial of due process is stronger than it was in the ''Scottsboro cases.''

When the case was last before this court (167 Miss. 390, 148 So. 340), Judge GRIFFITH embodied in his dissenting opinion the facts with reference to an alleged confession of guilt by appellant. It is unnecessary to repeat here the facts there stated; they are a part of the record in this case.

Appellant's attorney testified on this motion for a new trial. He admitted that he abandoned the case in the supreme court, neither argued it orally nor briefed it. He also admitted that he did not make an application for a continuance on account of the absence of material witnesses because he was afraid his client would be mobbed. This fact was developed in this manner:

''Q. What were the circumstances that caused you to go to trial unless you were prepared and ready to go to trial? A. The principal thing and attitude that Mr. Colmer (the district attorney) seemed to assume that morning.

''Q. Well, what was his attitude? A. I conferred with Mr. Colmer prior to the opening of the court, on the morning Tom was tried, after I had discovered that two witnesses, whom I considered material, had not been served with summons, the return showing they were not found by the sheriff, and I told Mr. Colmer I was going to ask for a continuance on that ground, and Mr. Colmer ad-

vised me not to do that, that under the circumstances he thought it best not to start any monkeying business.

. . .

"Q. Did you consider something might happen to Tom Carraway if you delayed the case? A. That is the way I took Mr. Colmer's statement; I drew that inference from what he said.

"Q. You formed the opinion if you delayed trying the boy that a mob might get him? A. I thought it might not be healthy for him.

"Q. You were looking for temporary relief for the man rather than permanent relief? A. Yes, at that time."

Judge WHITE, in whose court appellant was tried and convicted, in overruling the motion for a new trial, dictated into the record his findings of fact and conclusions of law. Among other things, he stated that during appellant's trial he observed his absolute indifference of his attorney to his fate; that at every stage of the proceeding appellant's attorney evidenced entire indifference as to the result of the trial and the fate of his client. Judge WHITE concluded by stating that he was firmly of the opinion that appellant should not be held accountable for the failure of his attorney to properly prepare and present his case, and that, if he could grant him a new trial without overriding the opinion of the supreme court rendered in this case on the former appeal, he would not hesitate to do so.

The attorneys representing the defendants in the "Scottsboro cases" appear to have done as well, if not better, for their clients than appellant's attorney did for him.

Can this question be raised by motion for a new trial in the court in which the judgment was rendered? That question is answered in the affirmative by decisions of our court as well as the decision of the supreme court of the United States in Frank v. Mangum, 237 U. S. 309, 35

S. Ct. 582, 59 L. Ed. 969. In the Frank case the record of the proceedings of the trial and conviction were all regular. The judgment of conviction was attacked by writ of habeas corpus. The supreme court held that it could be attacked in that manner, and furthermore that in making the attack Frank was not confined to the facts shown on the face of the record, but could resort to evidence aliunde the record to show a denial of due process. The decision in that case means that, where due process is denied, the judgment is void and can be attacked, whenever it stands in the way, either in a direct or collateral proceeding. It is in the same class with judgments void on their face and judgments procured by fraud. The court in which such a judgment is rendered can set it aside at a subsequent term on motion. Butler v. State, 12 Smedes & M. 470, 1 Morris's State Cases, 428; Harper v. Barnett (Miss.), 16 So. 533 (not reported [in state report]); Meyer v. Whitehead, 62 Miss. 387; Newman v. Taylor, 69 Miss. 670, 13 So. 831; Niles v. Anderson, 5 How. 365; Fairly v. Thompson, 34 Miss. 101.

In the Meyer case a judgment was rendered against the defendant by default at the return term, upon a return of personal service of summons made five days before the return day. At a subsequent term defendant made a motion in the court rendering the judgment to vacate it upon the ground that in truth and in fact the summons was served only four days before the return day. On the trial of the motion the defendant proved that fact. The supreme court held that the trial court should have vacated the judgment and treated the case as pending. The ground of that decision, although the court in its opinion did not expressly so state, was that the defendant was denied due process, and for that reason the judgment was void. The judgment appeared regular on its face; the denial of due process was shown by evidence aliunde the record.