908 So.2d 189 (2005)
Tara Regina LYLE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02280-COA.
Court of Appeals of Mississippi.
August 2, 2005.
*191 Jonathan Thomas Crump, Tupelo, Darrell Fayne Brown, attorneys for appellant.
Office of the Attorney General, by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., MYERS and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Tara Regina Lyle was convicted in the Circuit Court of Union County of the murder of her husband. She was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. From her conviction she appeals claiming the following errors which we quote verbatim:
I. WHETHER THE APPELLANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS AND A RIGHT TO A FAIR TRIAL BY THE COURT'S DENIAL OF HER REQUEST FOR A CONTINUANCE
II. APPELLANT WAS NOT REPRESENTED BY AN ATTORNEY LICENSED TO PRACTICE IN MISSISSIPPI
III. APPELLANT SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 2. Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 3. Tara Regina Lyle and Kenneth Gerald Lyle were married for fourteen years. The marriage was a volatile one and ended when Mrs. Lyle shot Mr. Lyle three times, resulting in his death. Mr. Lyle would move away from the marital home then come back. He did this several times causing Mrs. Lyle to file for divorce in May 2002.
¶ 4. The Lyles lived in Memphis. However, Mr. Lyle worked in Columbus and commuted to the family home in Memphis. During the last years of their marriage Mrs. Lyle discovered that Mr. Lyle had a girlfriend, Vanessa Brown, in Columbus, Mississippi.
¶ 5. Mr. Lyle was not at home for Thanksgiving 2002, which enraged Mrs. Lyle. She called Vanessa Brown's home and got her elderly father. She identified herself and asked to talk to his daughter because "somebody is fixing to get hurt." On the Saturday before she killed her husband, Mrs. Lyle went to Vanessa Brown's home in Columbus. Only Brown's elderly father was at home. Mrs. *192 Lyle gained entry to the home under the pretense that she had car trouble and wanted to use the telephone and bathroom. As Mrs. Lyle was looking around, Mr. Brown recognized her voice from the earlier telephone call, and asked her to leave which she did. When Mr. Lyle and Vanessa Brown came back to the house, Mr. Brown said he told them not to get out of the car because he feared what Mrs. Lyle might do to them. He took them to another house because he was "afraid for their life because she had already said somebody was going to get [hurt] and after she came down, you know, I was afraid...." Earlier Mrs. Lyle had called her husband's brother and told him that "some one was going to pay for her feelings." The brother testified that he considered this a threat, and immediately tried to call his brother and warn him but had to leave a message.
¶ 6. On December 2 Mr. Lyle called his wife and asked her to bring to him his clothing and other items, including his knife and pistol. He also told her to bring their daughter, Kelcy, and her clothing because he was going to put her in school in Columbus.
¶ 7. They agreed to meet that day at a convenience store in New Albany for the swap. What happened next was not disputed. They parked near each other and Mr. Lyle went to her car. He pounded on the trunk when she did not get his personal items out. She walked toward the trunk with his .380 caliber semi-automatic pistol in her pocket. She then took the gun out and shot him. The shot severed his spinal cord causing him to fall face down in the parking lot. Mrs. Lyle then walked over to where he was laying face down in the parking lot and shot him two more times in the back. He died of these wounds.
¶ 8. When the first officers arrived on the scene they secured the weapon from Mrs. Lyle, who stated that she had shot her husband. The shooting was observed by a customer at the convenience store, who identified Mrs. Lyle as the shooter. Kelcy, the Lyles' twelve-year-old daughter, who was lying in the back seat, heard the gun shots, jumped out of the car and ran into the convenience store telling the attendant that "my dad has been shot by my mom."
¶ 9. Mrs. Lyle testified that she remembered shooting her husband once but does not remember what happened next. Additionally, Mrs. Lyle testified that she and her children suffered mental and physical abuse at the hands of Mr. Lyle. However, neither she nor her children had sought medical attention for any injuries Mr. Lyle was alleged to have caused them.
¶ 10. Other facts will be set out during the discussion of the issues.

ANALYSIS

I. WHETHER THE APPELLANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS AND A RIGHT TO A FAIR TRIAL BY THE COURT'S DENIAL OF HER REQUEST FOR A CONTINUANCE
¶ 11. Mrs. Lyle makes two arguments under this issue.

A. The Trial Court Improperly Chose Appellant's Attorney
¶ 12. Mrs. Lyle had hired attorney Jimmy Shelton of Tupelo to represent her in this cause. On May 23, the date of her arraignment, she learned Shelton's license was suspended. Another member of the Shelton law firm, William C. Stennett, represented her at the arraignment. At a September 8, 2003 hearing, Stennett moved the court to allow him to withdraw from the case. Stennett said that Mrs. Lyle had told him she wanted someone *193 from another law firm to represent her. Stennett said that he had been contacted by Arkansas attorney Darrell Brown, who told him he was representing Mrs. Lyle, but Brown was not in court for the hearing. Although Stennett apparently was allowed to withdraw from representing Mrs. Lyle, another member of the Shelton law firm, Jonathon Crump, was present on her behalf at her September 10, 2003 trial. Arkansas attorney Brown was the lead counsel representing Mrs. Lyle at her trial.
¶ 13. Stennett also moved for a continuance. The judge denied the motion for continuance saying that he tried cases in his district based upon their importance and he thought that this case was an important case and needed to go forward. The trial judge stated a "definite aversion" to granting a continuance because of a last minute change of lawyers. During the September 10 trial, attorney Brown indicated that he had been hired on the case "less than two weeks" before the trial. The court said that although the new counsel did not have a "great deal of time" to prepare for the trial, he had "an adequate time" to mount a defense.
¶ 14. On appeal Mrs. Lyle argues that she was denied her right to choose the counsel of her choice to represent her at her murder trial. The record simply does not support that claim. Mrs. Lyle first employed Jimmy Shelton as her attorney, and upon his suspension from the practice of law, employed Darrell Brown.
¶ 15. Mrs. Lyle argues Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) in support of her position that a criminal defendant should not be forced to accept the services of an attorney that she did not hire and does not want to represent her. The holding of Faretta is that a criminal defendant has a constitutional right to self representation and a trial court cannot force a lawyer upon the defendant. Id. at 836, 95 S.Ct. 2525. Such is far from the situation in the case sub judice. Mrs. Lyle is not demanding the right to represent herself, instead she has had retained counsel at each stage of her progression through the legal process, at the arraignment then at her trial. Mrs. Lyle also cites Carraway v. State, 170 Miss. 685, 154 So. 306 (1934) to support her argument. However, Carraway holds that a court must allow the lawyer of a criminal defendant's choosing to represent him. "[I]t would be a dangerous proceeding if a court declined to permit the counsel chosen and selected by the family of [the] accused, and accepted by the [defendant], to represent the [defendant] in the trial of his case." Id. at 307.
¶ 16. Mrs. Lyle's argument that she did not have counsel of her own choosing is simply not supported by the record.

B. Appellant Was Denied Her Right To Due Process And Effective Assistance Of Counsel By The Trial Court's Denial Of Her Motion For Continuance
¶ 17. Mrs. Lyle argues that when Brown replaced Shelton as her attorney, he was not given enough time to prepare for the case. At a hearing on a motion for continuance, Brown indicated that he had been involved in the case for less than two weeks.
¶ 18. The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial judge. Johnson v. State, 631 So.2d 185, 189 (Miss.1994). The trial judge's decision will not be reversed unless it appears to have resulted in manifest injustice. Stack v. State, 860 So.2d 687, 691(¶ 7) (Miss. 2003). The burden of showing manifest injustice is not satisfied by mere conclusory allegations. Instead the defendant is *194 required to show concrete facts that show the particular prejudice to the defendant. Id. at 691-92(¶ 7). Applying these rules to this case, we cannot say that the denial of the defendant's motion for a continuance was an abuse of discretion.
¶ 19. Mrs. Lyle's attorney made an ore tenus motion for a continuance prior to jury selection which he renewed after the selection of the jury. In offering these motions, Brown stated he had become involved in the case in only the last two weeks and had not had time to adequately prepare a defense for Mrs. Lyle. In support of his motion Brown said with additional time he might "perhaps" identify certain witnesses or issue subpoenas.
¶ 20. The record is devoid of any evidence or proof as to precisely how additional time by way of a continuance would have assisted counsel. Instead there is only the statement by counsel that "perhaps" he could have found witnesses or issued subpoenas. The record shows Brown actively defended Mrs. Lyle. He questioned jurors during voir dire, cross-examined the state's witnesses, called four witnesses on Mrs. Lyle's behalf and was fully involved in the jury instruction process.
¶ 21. Denials of continuances have been upheld where defense counsel was afforded fewer days to prepare than the fourteen days the defendant here had to prepare: Hughey v. State, 512 So.2d 4, 6 (Miss.1987) (defendant goes to trial on the day of arraignment and nine days after appointment of counsel); Cole v. State, 405 So.2d 910, 911-12 (Miss.1981) (defense counsel had seven days to prepare for murder trial); Speagle v. State, 390 So.2d 990, 992 (Miss.1980) (new defense counsel given one day to prepare for incest trial); Shaw v. State, 378 So.2d 631, 633-34 (Miss.1979) (defense counsel given eight days to prepare for trial); and Garner v. State, 202 Miss. 21, 24, 30 So.2d 413, 414 (1947) (counsel for defense given seven days to prepare for a capital murder trial).
¶ 22. Mrs. Lyle's counsel has failed to show that he would have done anything differently or presented any different type of defense had the motion been granted. Likewise, he has not demonstrated that Mrs. Lyle was in any way prejudiced because the requested continuance was denied. Counsel's statement that "perhaps" he could have found other witnesses or issued subpoenas is not enough.
¶ 23. We find that trial court did not abuse its discretion in denying the motion for a continuance.

II. APPELLANT WAS NOT REPRESENTED BY AN ATTORNEY LICENSED TO PRACTICE IN MISSISSIPPI
¶ 24. The attorney who now brings this appeal to our Court argues that he was not an attorney licensed to practice in Mississippi at the time of the trial. He says that the Mississippi Supreme Court Clerk did not issue the "Clerk's Pro Hac Vice Statement" until September 12, 2003, which was after the trial was over.
¶ 25. Prior to the trial, Brown made an ore tenus motion for admission to practice in Mississippi. Local counsel, Crump, vouched for his admission. The circuit judge noted that he was not certain the pro hac vice application process had been completed with the state supreme court, but because of time constraints he was going to allow Brown to appear. After the trial on September 10, 2003, the judge entered an order on October 6, 2003, allowing Brown to appear pro hac vice which he ordered nunc pro tunc to the day of the trial.
¶ 26. Mrs. Lyle argues that while her counsel may have had the express permission of the trial court to practice in Mississippi, *195 the manner in which he was allowed to practice calls into question his competency.
¶ 27. This is a question of law, which we review de novo. In re Williamson, 838 So.2d 226, 233 (¶ 14) (Miss.2002).
¶ 28. The procedures for attorneys not licensed to practice in Mississippi to follow to appear before a Mississippi court are found in Rule 46(b) of the Mississippi Rules of Appellate Procedure. The foreign attorney is allowed to appear pro hac vice if he or she is in good standing in the bar of another state and is of good moral character. M.R.A.P 46(b)(2). The foreign attorney must file an informational affidavit with the local court and with the Supreme Court Clerk that includes a list of requirements for practicing in this state and pay a fee of $200. Id. at 46(b)(5). See M.R.A.P 46(2)(b)(5) for the requirements of the informational affidavit. The foreign attorney must also have associated a local attorney in order to appear before a Mississippi court. M.R.A.P. 46(b)(4). The rule provides that, except by agreement of the parties, the court before which the attorney desires to appear shall not rule on the application of foreign counsel to appear as counsel pro hac vice sooner than twenty-one days after service of the informational filing. M.R.A.P.46 (b)(6). The foreign attorney cannot appear as counsel pro hac vice until he or she has certified to the trial court that a copy of the order authorizing the attorney to appear has been provided to the Clerk of the Supreme Court. M.R.A.P. 46(b)(7).
¶ 29. It is clear that Attorney Brown did not timely follow all of the procedures to be admitted pro hac vice. Although Brown did not follow all of the rules for admission pro hac vice prior to the trial, he did obtain a bench ruling from the trial judge allowing him to represent Lyle. There was no objection from the State to Brown's participation in this case. Brown did complete the admission requirements very soon after the trial was over, and by written order was granted admission nunc pro tunc. It is also equally clear that there has been no indication that Brown was not eligible for pro hac vice admission.
¶ 30. The penalty for failure to abide by the admission rules is that upon motion by any party any pleading or other papers from the foreign attorney not in compliance with Rule 46 shall be stricken. M.R.A.P. 46(B)(11).
¶ 31. The issue of an attorney's lack of credentials to qualify as a pro hac vice attorney, should be raised prior to trial, or such failure procedurally bars raising it on appeal. Terrell v. Tschirn, 656 So.2d 1150, 1152 (Miss.1995) "Where a party knows or with reasonable diligence may have discovered the Rule 46 violation, the failure to file a motion prior to trial acts as a waiver and procedurally bars him from raising the issue on appeal." Id. The reason for this ruling is that an attorney "should not be allowed to take his chances with a jury and then, after he loses," file a motion based upon his non-compliance with Rule 46. Id.
¶ 32. The same reasoning would appear to be applicable to the case sub judice. Mrs. Lyle is procedurally barred from raising her attorney's failure to comply with Mississippi's pro hac vice requirements. Now that she has taken her chances with the jury and lost her case, she cannot now raise the issue on appeal. The request that Brown participate in the case came from Mrs. Lyle, who had employed him. A party will not be heard to object to her own request. Caston v. State, 823 So.2d 473, 502 (¶ 101) (Miss. 2002).
¶ 33. We caution the bench and bar that this decision should not be interpreted *196 as allowing pro hac vice status to attorneys who have failed to comply with the requirements of Rule 46(b). The supreme court has held that Rule 46(b)(6)(ii) requiring the association of local counsel and the submission of a correct informational affidavit should be strictly construed. In re Williamson, 838 So.2d 226, 234 (¶ 16)(Miss.2002). But under the facts of this case and the prior precedent, we find that the issue of pro hac vice status is procedurally barred and is not properly before this Court.

III. APPELLANT SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 34. Mrs. Lyle contends that she was denied effective assistance of counsel because her trial counsel was unable to conduct an independent investigation of the case and unable to examine the jury pool. She also claims her attorney could not and did not conduct a search of exculpatory or mitigating evidence due to the short period of time between his retention and the trial. She claims she was rushed to a trial for which she could not prepare.
¶ 35. We note at the outset that a claim of ineffective assistance of counsel is best brought at the post-conviction relief stage as the record on direct appeal is generally insufficient to evaluate the claim. Read v. State, 430 So.2d 832, 837 (Miss.1983). When an ineffective assistance claim is made on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert ineffective assistance of counsel in a post-conviction relief proceeding. Id.; Willis v. State, 811 So.2d 450, 454(¶ 8) (Miss.Ct.App.2001).
¶ 36. The Court, however, may address the merits of the claim on direct appeal when the record is adequate to allow our Court to make the finding without consideration of the findings of fact of the trial judge or when the record shows ineffectiveness. Walker v. State, 880 So.2d 1074, 1076(¶ 5) (Miss.Ct.App.2004); Colenburg v. State, 735 So.2d 1099, 1101(¶ 5)(Miss.Ct.App.1999). We find the record in this case to be adequate to decide the ineffective assistance issue.
¶ 37. To establish a claim for ineffective assistance of counsel the defendant must prove that under the totality of circumstances: (1) her counsel's performance was deficient and (2) the deficient performance deprived her of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Benson v. State, 821 So.2d 823, 825(¶ 5) (Miss.2002). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Bell v. State, 879 So.2d 423, 430(¶ 8) (Miss. 2004) (quoting Burns v. State, 813 So.2d 668, 673(¶ 14) (Miss.2001)).
¶ 38. When determining whether the defendant's counsel is ineffective the inquiry focuses on whether the counsel's performance fell below an objective standard of reasonableness. Id. (quoting Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Defense counsel is presumed competent, and because of the distorting effects of hindsight, there is a strong presumption that a defendant's counsel's conduct is within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 693, 104 S.Ct. 2052.
¶ 39. With regards to a claim of denial of a fair trial, the defendant must show how counsel's errors prejudiced her. Id. The defendant must show a "reasonable probability that, but for counsel's unprofessional *197 errors, the result of the proceedings would have been different." Id. at 691-92, 104 S.Ct. 2052. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the case. Id. at 694, 104 S.Ct. 2052.
¶ 40. When a defendant challenges her conviction, the question then becomes whether there is a reasonable probability that without the alleged errors, the fact finder would have had a reasonable doubt regarding her guilt. Bell, 879 So.2d at 431(¶ 11). The record in this case does not suggest a reasonable probability of a different outcome.
¶ 41. The effect of Mrs. Lyle's argument on this point is that her attorney on appeal and at trial, Brown, is claiming his own ineffectiveness. The supreme court has spoken on this issue. "[I]t is absurd to fantasize that [trial counsel] might effectively or ethically litigate the issue of his own effectiveness." Read, 430 So.2d at 838. Our Court has dealt with this issue stating that it is "problematic and inappropriate for an attorney who represents a criminal defendant at trial to represent that same defendant on appeal where the attorney intends to raise an ineffective assistance of counsel claim in that appeal." Hill v. State, 749 So.2d 1143, 1149 (¶¶ 16-17) (Miss.Ct.App.1999). The Court, citing four rules of professional conduct violations from such representation, said that raising such an error on appeal "leaves questions as to whether it is a good faith argument, or rather an action to circumvent the judicial process." Id. at 1150(¶ 17).
¶ 42. Nevertheless, the supreme court has ruled that the Strickland test applies even to such a questionable appellate argument of a lawyer claiming his own ineffectiveness. Minnick v. State, 551 So.2d 77, 99 (Miss.1988) (overruled on other grounds).
¶ 43. Applying the Strickland test, we find that Mrs. Lyle's attorney's representation was not ineffective. He participated in an extensive voir dire of the jury and a cross-examination of the State's witnesses. He also called four witnesses on behalf of Mrs. Lyle, witnesses which would support her theory of the case, i.e., that she was a battered wife and that her husband committed adultery. Her attorney also participated in the crafting of jury instructions. An evaluation of the record shows that he was never uninvolved in the case. In fact the record shows an aggressive defense of a relatively airtight case for the State.
¶ 44. The testimony that Mrs. Lyle shot her husband is uncontradicted. Mrs. Lyle herself admits to shooting her husband. She testified, "He [Kenneth] went under the seat and then he raised back up and when he came up I shot him." A customer at the convenience store saw her make the fatal shots and Mrs. Lyle told police who responded to the shooting that she had shot her husband. Even her own daughter ran into the store after the shooting telling the clerk, "my dad has been shot by my mom."
¶ 45. Her counsel vigorously participated in the voir dire of the jury, tested the veracity of the State's witnesses on cross-examination, called witnesses on her own behalf and participated in challenging jury instructions. Under such a fact situation we cannot say that counsel was ineffective.
¶ 46. Finally, Mrs. Lyle claims that the cumulative errors made at the trial should require a reversal. When there is no reversible error in any part of an appeal, there can be no reversal of the case as a whole. Byrom v. State, 863 So.2d 836, 847(¶ 12) (Miss.2003) Since Mrs. Lyle has not shown any actual error by the trial court, there can be no cumulative effect and no adverse impact upon her constitutional *198 right to a fair trial. Thus, this argument is without merit.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY OF CONVICTION OF MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT IN AN INSTITUTION TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.