914 So.2d 800 (2005)
Ricky MILLER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01776-COA.
Court of Appeals of Mississippi.
November 8, 2005.
*801 Carrie A. Jourdan, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
BARNES, J., for the Court.
¶ 1. On April 16, 2003, in Clay County, Mississippi, Ricky Miller stood trial and was convicted of armed robbery and burglary of an occupied hotel room. On appeal, Miller raises three assignments of error: ineffective assistance of counsel, denial of his right to a fair and impartial jury, and admission of certain evidence despite an alleged discovery violation by the State. Finding no error, we affirm Miller's conviction and sentence.

FACTS
¶ 2. At trial, Kevin Freeman testified that, on January 24, 2003, he rented a hotel room at the Southern Inn in order to "party." He admitted that he and his friends had been drinking and smoking marijuana until the early morning hours. Freeman testified that although he specifically recalled shutting and locking the hotel room door, he was subsequently awakened by two men, whom he identified as Miller and Richard Jefferson, standing over his bed.
¶ 3. Freeman stated that Miller questioned him about whether Freeman had called him a "snitch," suddenly produced a small caliber handgun, placed it to Freeman's head and ordered that he surrender his wallet. Freeman testified that an altercation then ensued, wherein both Miller and Jefferson repeatedly hit Freeman, and Miller hit Freeman near his eye with the handgun. Freeman stated that as he was attempting to escape and was yelling for help, an elderly man walked by the room; Miller and Jefferson then ran from the room and fled the scene in a gray Mercury Marquis.
¶ 4. Freeman admitted that he was unaware of what occurred in the room after he fell asleep and said it was possible that someone else in the hotel room had left the *802 door open. Under cross-examination, Freeman admitted that, in a statement given to the police on the night of the incident, he never said anything about Miller hitting him with a gun. Additionally, Freeman testified that he had sold drugs in the past.
¶ 5. The altercation and subsequent flight of Miller and Jefferson were confirmed by two State's witnesses, James McClora and Charles Davidson, although neither witness actually saw the events leading up the altercation. Davidson testified that he saw two of the parties scuffling; however, he was unable to testify as to any other specifics. The final State's witness was Chris Hammond, who had previously given a statement to the investigator of this case, Charles Johnson, and led Johnson to recover the pistol that Miller allegedly gave to Hammond. Hammond also advised Johnson of several admissions made by Miller. At trial, Hammond changed his testimony, and the district attorney was allowed to impeach him with his prior statement.
¶ 6. Taking the stand, Miller testified that he and Jefferson had gone to the Southern Inn to purchase marijuana from Freeman. Miller stated that he had purchased marijuana on previous occasions from Freeman and that he previously had a relationship with Freeman's sister. Miller denied breaking in, stating that he and Jefferson had simply gone to the hotel room to which they had been directed by Freeman and entered because the door was open. Miller testified that he and Jefferson woke Freeman, but claimed that the altercation began when Freeman directed a racial slur at Jefferson. Miller testified that it was Freeman who had the gun, and that Miller took the gun to prevent Freeman from using it. Miller also claimed that he and Jefferson fled the scene because they did not know what else to do.
¶ 7. In rebuttal, Jefferson, who had been given a plea bargain, confirmed Freeman's version of events. Also, during rebuttal, the jury was shown a videotape of Miller in which Miller gave his account of the events but did not indicate that the fight started over a racial slur.
¶ 8. At the close of the proceedings, Miller was convicted on both counts and sentenced to twenty years for the armed robbery and five years on the burglary, with the sentences to run consecutively.

ISSUES

I. WHETHER MILLER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 9. Miller claims that throughout voir dire and the trial, there were many instances wherein his defense counsel's inexperience prejudiced the proceedings and deprived him of his rights to a fair trial and effective assistance of counsel. Miller claims that he was prejudiced because his attorney, a public defender for Clay County, had not previously tried a criminal case and had no assistance or resources. Miller claims that, while his counsel "made a valiant effort during the trial," he "failed to make even the most rudimentary pretrial investigation and was clearly woefully unprepared." Specifically, Miller claims he received ineffective counsel because his counsel: (1) failed to conduct any pretrial investigation, such as reviewing important evidence and attempting to locate or interview important witnesses; (2) failed to voir dire the jury panel in a proper manner; (3) failed to make a Batson challenge; (4) repeatedly failed to object to improper testimony; and (5) failed to submit proper jury instructions.
*803 ¶ 10. To obtain reversal of a conviction on the grounds of ineffective assistance of counsel, a convicted defendant must show first that his counsel's performance was deficient, and second, that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, the defendant must overcome the strong presumption that his attorney's conduct "falls within a broad range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. To establish prejudice, a defendant must show that there is a reasonable probability that, but for his attorney's deficient performance, the finder of fact would have had a reasonable doubt concerning his guilt. Id. at 694-95, 104 S.Ct. 2052 ("A reasonable probability is sufficient to undermine confidence in the outcome"). The right to effective assistance of counsel is intended to ensure that the defendant receives a fair trial; therefore, to establish prejudice, the defendant must show that counsel's errors were so severe as to deprive him of a fair trial with a reliable result. Id. at 687, 104 S.Ct. 2052. In determining whether there was prejudice, the reviewing court must look to the totality of the evidence before the jury. Id. at 695, 104 S.Ct. 2052. In sum, where it is reasonably probable that, but for the attorney's errors, the outcome of the trial would have been different, a reviewing court should find that counsel's performance was deficient. Reed v. State, 536 So.2d 1336, 1339 (Miss.1988). It is important to note that an attorney's "choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections" falls within the ambit of trial strategy and does not give rise to a valid ineffective assistance claim. Powell v. State, 806 So.2d 1069, 1077(¶ 18) (Miss.2001).
¶ 11. First, Miller claims that his attorney was ineffective for failing to conduct any pretrial investigation. Specifically, Miller claims that his counsel failed to review important evidence and failed to attempt to locate or interview important witnesses. Miller points out that Freeman reported that three individuals  Allen Brown, Tonio Hammond and Phillip (last name unknown)  had been with him earlier that night, that no subpoenas were issued for these witnesses, and that they were never interviewed. Miller contends these witnesses could have verified whether Freeman was selling drugs from his room at the Southern Inn, whether he had a gun in the room, and whether they left the door to the hotel room open. Miller points out that his trial counsel never interviewed Chris Hammond, was unaware of Hammond's "second interview" with Dave Holley,[1] a district attorney investigator, and never viewed the complete video of Miller's statement. The State argues that, although Miller complains about the lack of any pretrial investigation, he has "not demonstrated prejudice where, as here, he has not alleged anything that would have led to a different result." See Hebert v. State, 864 So.2d 1041, 1044-45(¶ 10) (Miss.Ct.App.2004). Specifically, Miller has failed to tell this Court "what facts in mitigation a further investigation would have revealed or uncovered." See id. All that Miller provides is his contention that these witnesses were not interviewed and that certain evidence was not reviewed. His inability to show ineffective *804 assistance on counsel is not surprising, as the record on direct appeal is generally insufficient for us to evaluate such a claim. See Lyle v. State, 908 So.2d 189, 196(¶ 35) (Miss.Ct.App.2005). "When an ineffective assistance claim is made on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert ineffective assistance of counsel in post-conviction relief proceedings." Id. (citing Read v. State, 430 So.2d 832, 837 (Miss.1983)). Though we find that Miller has failed to demonstrate ineffective assistance of counsel regarding his attorney's alleged lack of trial preparation, we reject his claim without prejudice to Miller's right to raise this issue on post-conviction review.
¶ 12. Second, Miller argues that he received ineffective assistance of counsel due to his attorney's failure to voir dire the jury panel in a proper manner. He argues that his counsel failed to ask if any of the jurors were employed in the law enforcement field or were related to anyone in law enforcement; failed, when questioning former crime victims, to ask if they were satisfied with the outcomes of their respective cases and if the process had left them with bad feelings; failed to inform the panel of the State's burden of proof; and failed to prepare the potential jurors regarding his strategy of the case. While Miller admits that some of the foregoing could be considered trial strategy, he argues that "the voir dire was done by rote and without purpose." The State argues that attorney's actions during voir dire are considered a matter of trial strategy. See Wilcher v. State, 863 So.2d 719, 755 (¶ 136) (Miss.2003).
¶ 13. Having fully reviewed the voir dire in this case, this Court is unable to find that Miller's counsel was ineffective. Even if the actions of defense counsel were not strategic, nothing raised by the appellant would meet the standard of Strickland. In particular, Miller cannot show any prejudice as a result of any of these omissions. His contention is without merit.
¶ 14. Third, Miller asserts that his trial counsel failed to make a Batson challenge although nearly all of the State's peremptory challenges were used to excuse black jurors. Miller claims that the State's singling out of black jurors violated the Fourteenth Amendment to the United States Constitution and Article 3 of the Mississippi Constitution, both of which forbid race-based peremptory challenges. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In response, the State argues:
For this Court to rule on this issue, evidence of the racial makeup of the jury itself and evidence of the racial identity of each stricken juror would have to be presented into the record. This Court is only allowed to base its decisions upon evidence found within the record, not on assertions made by the parties in their briefs. Mason v. State, 440 So.2d 318, 319 (Miss.1983). No such evidence was present within the record of this case, and for this reason, this Court cannot rule on whether the prosecution misused its challenges in such a way that [the appellant's] counsel should have objected. Therefore, this basis cannot support an ineffective assistance of counsel claim.
Donerson v. State, 812 So.2d 1081, 1088(¶ 18) (Miss.Ct.App.2001).
¶ 15. The record is silent as to the race of any of the potential and actual jurors, both those who were excluded by the State's peremptory challenges and those who ultimately sat on the jury. As this alleged error is without support, we cannot find error based on the record in this case. Again, however, we reject Miller's claim *805 without prejudice to his right to raise this issue on post-conviction review.
¶ 16. Fourth, Miller contends that his trial counsel repeatedly failed to object to improper testimony or to have proper testimony admitted into evidence. The State responds that, when looking at the admission or objection of evidence as a matter of trial strategy, "[t]he failure to object to its admission does not rise to the level of prejudice required under Strickland." Carle v. State, 864 So.2d 993, 997(¶ 14) (Miss.Ct.App.2004). Miller specifically argues that his trial counsel attempted to impeach Freeman with his prior statement but could not do so properly. Miller also contends that in attempting to impugn Freeman's version of events by suggesting a motive for him to lie, Miller's trial counsel erroneously identified veracity, rather than motive, as the grounds for admissibility. The trial court, however, well aware of the admissibility of the evidence, overruled the State's objection. We cannot find that any of these alleged errors has sufficiently prejudiced the appellant to the extent that Strickland requires; therefore, we find Miller's contention to be without merit.
¶ 17. Finally, Miller argues that a review of the submitted jury instructions and the record shows that his trial counsel neglected to submit jury instructions on lesser-included offenses. Miller's account was that he had gone to the Southern Inn to purchase drugs at the direction of the alleged victim and that the fight in question broke out as a result of a racial slur. Miller argues that his testimony supports the submission of jury instructions for simple assault and/or trespassing. Miller claims that had the jury believed his account that the incident was the result of a drug transaction gone bad, it could have easily voted for a simple assault verdict. However, Miller cites no authority for his proposition that failure to submit a lesser-included offense instruction constitutes ineffective assistance of counsel. It is possible that Miller's counsel believed that Miller would be acquitted of the greater charge but convicted of the lesser offense, and made a calculated decision not to pursue the lesser-included offense instruction. See Powell, 806 So.2d at 1078(¶ 24). Thus, we conclude that Miller has not proved that his attorney's failure to submit a lesser-included offense instruction constituted ineffective assistance of counsel. Miller's claim is without merit.
¶ 18. In sum, we reject Miller's claims of ineffective assistance of counsel, but do so without prejudice to Miller's right to raise the investigation and Batson issues on post-conviction review.

II. WHETHER MILLER WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL JURY
¶ 19. Miller claims that the trial court failed to sustain defense counsel's objection for cause to Juror # 21 and Juror # 37, in light of substantial evidence that they could not decide the case impartially, and that consequently defense counsel was forced to use his peremptory challenges on them. Miller also claims the trial court erroneously sustained the State's objection for cause to Juror # 1, allegedly a black juror, on the grounds the district attorney had prosecuted an unspecified member of her family, despite the State's failure to object to jurors # 5, # 8, # 10, # 12, and # 25 on the same basis. We find Miller's arguments to be without merit.
¶ 20. Despite the fact that his father had been murdered, Juror # 21 represented to the court under oath that this circumstance would not affect his ability to decide the case fairly. The current case does not involve a similar crime. Juror # 37 represented that while she knew *806 the grandmother of the victim, this would not affect her service on the jury. Miller acknowledges that his counsel used his peremptory challenges to keep these prospective jurors from sitting on the jury. Miller's statement that there was substantial evidence that these prospective jurors could not decide the case impartially is unsupported and directly contrary to the record in this case.
¶ 21. The race of any of the potential jurors and the racial composition of the jury which heard the case is not part of the record in this case. All the potential jurors were asked if any member of their families had been charged or convicted of a crime. Juror # 1 was removed for cause because the district attorney's office was currently prosecuting a member of her family. Juror # 5 stated that the charges against one of his family members had "been over with years and years ago" in Alabama and that the experience would not affect his judgment in this case. Juror # 8 stated that the matter in issue was completed and that she did not know if this district attorney's office was involved. Jurors # 10 and # 25 also said that the cases against their family members were completed and did not involve this district attorney's office. Juror # 12 stated that the matter was completed, and the district attorney's office had been involved. All the potential jurors indicated that the prosecution of their family members would not affect their judgment in this case. Contrary to Miller's argument, all of these potential jurors were not similarly situated. Only Juror # 1 had a family member with a current and pending criminal charge. Even if the Court had been provided the races of these potential jurors, there is no indication of any impropriety.
¶ 22. A defendant has no right to have a specific prospective juror try his case, nor may he appeal a particular exclusion if the end result of the jury selection process is a jury composed of fair and impartial jurors. Edwards v. State, 723 So.2d 1221, 1228(¶ 26) (Miss.Ct.App.1998). All of the potential jurors that Miller mentions were excluded, and he has made no argument that any or all of the jurors who actually sat on the jury were not fair and impartial. Miller's assignment of error is without support in the record and is thus without merit.

III. WHETHER CERTAIN EVIDENCE WAS IMPROPERLY ADMITTED
¶ 23. Miller argues that the State's failure to provide his attorney with a copy of his videotaped statement in a timely manner was a crucial factor in his conviction, and that his counsel's lack of familiarity with the video was "deadly" to his case. Further, Miller contends that the State's failure to produce the videotape in a timely and reasonable manner is no less a discovery violation than failing to produce it at all. Additionally, Miller argues that if this Court finds that his attorney failed properly to object to the video, then his counsel was constitutionally ineffective.
¶ 24. Miller also claims that investigator Holley had a "second interview" with Hammond about his testimony and the supposed interaction among Hammond, Miller, and Jefferson, and that the failure to provide a report on that interview to defense counsel had "disastrous consequences that could have been resolved with effective witness preparation." Miller contends that Holley's unrecorded interview of Hammond allowed Miller's counsel to be taken off-guard.
¶ 25. It is a well-established matter of law that the purpose of discovery is to eliminate trial by ambush or surprise. Fuselier v. State, 468 So.2d 45, 56 (Miss.1985); see also Morris v. State, 436 So.2d *807 1381 (Miss.1983). The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. Ellis v. State, 661 So.2d 177, 181 (Miss.1995). The problem with Miller's argument is that there was no clear discovery violation in this case. Even Miller concedes that his counsel had access to the videotaped interview, had a copy of the transcript of the tape, and that the State did not fail to produce this evidence. Miller's concern is the timeliness and "reasonableness" of access to the tape. His argument indicates that the evidence was available to the defense but that counsel may not have taken full advantage of the material. Miller argues that perhaps his counsel should have objected to the admission of the videotape, but does not offer any legal argument in support of excluding the tape. Again, as to the "second interview" with Holley, the record reflects that Holley discovered Hammond speaking with the defendant at the noon recess, broke up the conversation, and received assurance from Hammond that his testimony would be the same as that contained in his recorded statement. Holley's testimony was heard outside the presence of the jury to support the State's claim of "surprise" and motion to be allowed to cross-examine Hammond. While the subsequent impeachment of Hammond was perhaps "disastrous" to the defense, we cannot find any discovery violation on the part of the State. While the appellant strains to make an assignment of error, this Court cannot find that anything improper occurred at trial and therefore can find no reversible error.
¶ 26. Having carefully reviewed all the appellant's assignments of error, we find no error and affirm the circuit court's decision.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF COUNT I, BURGLARY OF AN OCCUPIED HOTEL ROOM AND SENTENCE OF FIVE YEARS; COUNT II, ARMED ROBBERY AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] As for the alleged "second interview" with Holley, Miller is apparently referring to a conversation Holley had with Hammond during the noon recess of trial after Holley discovered Hammond conferring with the defendant outside the courthouse. We fail to see how Miller's trial counsel could be expected to know of the conversation since it occurred during the trial.